UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

United States of America )
)
)
v. ) Crim. No. 14-CR-10175-IT
)
Andre Levesque )

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Andre Levesque, submits that based upon the following factors as outlined in 18 U.S.C.§ 3553 and ¶ 205 of the Pre-sentence Investigation Report:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentences and the sentencing range established for (A)

the applicable category of the defendant as set forth in [the Sentencing Guidelines]...;

    5. Any pertinent policy statement issued by the Sentencing Commission...;

    6. The need to avoid unwarranted disparities among defendants with similar conduct; and,

    7. The need to provide restitution to any victims of the offense,

a sentence of five (5) years probation is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment. See United Stated v. Jiminez- Beltre, 440 F. 3d 514 (1st Cir. 2006)(en banc)(Torruela, concurring) making it clear that in articulating its reasons for imposing any sentence district courts must make reference to this central principle.

The defendant's requested sentence is clearly a request for a NONGUIDELINE SENTENCE.

I. VARIANCE FOR ROLE IN THE OFFENSE

On July 19, 2014 the Grand Jury returned a 3 count indictment charging Mr. Levesque in Count 2 with conspiracy to possess with intent to distribute oxycodone. Had the case proceeded to trial, evidence based upon wiretaps, surveillance and seizures would have supported the allegation that the defendant's role in the conspiracy made him responsible for the equivalent of 643.2 kilograms of marijuana (¶120 of the PSR). As outlined in the Offense Conduct, specifically ¶9, 15, 17, 44, 46, 95-106, 112 & 113 of the PSR, the defendant submits that he is entitled to a variance for a Mitigating Role. On

April 9, 2015, the Sentencing Commission voted the promulgate amendments to the guidelines meant to take effect on November 1, 2015. The Commission made some changes to the mitigating role guideline that clarify its operation.[1] First, it addressed the meaning of "average participant", adopting the approach of the Seventh and Ninth circuits defining "average participant" by reference to those persons who participated in the criminal activity at issue in the defendant's case and rejecting the approach of the First and Second circuits which required a court to consider the defendant's culpability relative to his co-participants and to the typical participant in a similar crime.

Second, it added a non-exhaustive list of factors for the court to consider in determining whether to apply a -4, -2, or intermediate adjustment:

i. The degree to which the defendant understood the scope and structure of the criminal activity;

ii. The degree to which the defendant participated in planning or organizing the criminal activity;

iii. The degree to which the defendant exercised decision-making authority;

iv. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

---

[1] Information based on memorandum of the National Sentencing Resource Counsel Project

      v.      The degree to which the defendant stood to benefit from the criminal activity.

Third, the commentary now states by way of example that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline". Fourth, the commentary discussing individuals who perform limited functions has been changed to state they "may receive" a mitigating role adjustment rather than that they "are not precluded" from receiving an adjustment.

Applying the foregoing considerations to the defendant's role in this offense, it is clear that the defendant neither understood the scope and structure of the criminal conspiracy, had absolutely no planning or organizing role therein and exercised no decision-making authority or had any influence thereon. The defendant was initially a mere customer/addict who purchased pills and later began to redistribute those pills (PSR #15). Even after beginning to resell pills it could hardly be said that the defendant's role included any responsibility for or discretion as to the DTO. When interviewed on 1/30/15 pursuant to a standard proffer agreement, the defendant could not provide sufficient information to qualify for a USSG §5K1.1 motion. The defendant did not receive any great financial benefit from his sales activities other than to get a free fix. His release was on an unsecured bond posted by his mother and she has also paid for his legal fees (PSR¶148). If incarcerated the defendant's

family will likely lose their home to foreclosure (PSR¶157). The defendant is entitled to a 4 level decrease in this matter for a mitigating role in the offense.

II. <u>VARIANCE BASED UPON PRESENTENCE REHAIBILITATION</u>

<u>Defendant's Social History</u>

Although the Sentencing Guidelines are the starting point and the initial benchmark for federal sentencing, a court must consider all the § 3553 (a) factors to determine if they support the sentence requested by a party. <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007). Section 3553 (a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant when imposing sentence. It is worthwhile to note that when placed side by side, the Guideline provisions and statutory provisions under § 3553 (a) often contradict each other. For example, under the Guidelines, courts are generally prohibited from considering the defendant's family ties and responsibilities (§5H1.6). Yet, § 3553 imposes the requirement that the Court consider this factor as a necessary component to an individualized sentence for a particular defendant. See <u>United States v. Schroeder</u>, 536. F.3d 746, 756 (2008), finding family ties and responsibilities so unusual as to be extraordinary by analogy to an analysis using 3553(a) factors.

The defendant was born in Montreal, Canada, moved to the U.S. approximately a year later and grew up in Dracut, MA. His father was an alcoholic with anger issues. His parents divorced when he was 8 and he and his sister were raised by his mother. Although he tried to establish a

relationship with his father, his father was not interested and by age 12 the defendant's contact with his father was approximately once per year. The defendant's mother was supportive and provided for her children with the help of relatives. Many of those relatives struggled with alcohol and drug abuse.

The defendant remains extremely close with his mother and sister. His mother has provided financial support to the defendant during the pendency of this case. His sister has attended treatment sessions with the defendant to better learn how she can support his recovery. The defendant enjoys a very special relationship with his sister's child who is on the "Spectrum". The defendant is the loving father of 6 year old twin daughters and a 16 year old step-son, his wife's son from a previous relationship. Although initially "shocked" to learn of the defendant's arrest in this case the defendant's wife has been as supportive as anyone could ever be during their present ordeal.

After his June 2014 arrest, as a condition of his pretrial supervision, the defendant was referred to Greater Nashua Mental Health Center where he has been participating in an intensive mental health/substance abuse program which has involved group and one-on-one counseling. As related in ¶164 and 167 of the PSR:

> This counseling program has been incredibly beneficial to the defendant, as it has helped him to process his anger about his childhood, discover the root cause of his substance abuse issues, and cope with the stress and anxiety related to the instant offense.

The defendant has a strong support system in his wife, his sister and his mother, as well as his sister-in-law and his neighbor who are recovering addicts as well.

Considering the defendant's almost constant abuse of alcohol, marijuana, LSD, Cocaine, Ecstasy and/or various opiates from the time of his early teens, the defendant's complete sobriety since July of 2014 is nothing short of extraordinary. The defendant has learned to cope with cravings and has developed, with the help of counseling and the assistance of the positive influences in his every day life, strategies to avoid negative peers and influences.

The defendant continues to maintain his employment with Bedford Mechanical, the company he has worked for, with a 1 year hiatus, since 1999. His family ties and responsibilities have supported him in his battle with addiction.

The defendant submits that his current mental and emotional conditions are relevant to whether he should receive a variance for his presentence rehabilitation. There is no question that drug and alcohol dependence generally lead to criminal activity and did lead to the defendant's criminal activity in this case. USSG§5C1.1, Application Note 6 supports a variance/departure in this case:

a) The defendant was an abuser of narcotics;

b) The defendant's criminality is related to his narcotics abuse;

c) The defendant's continued drug abuse/mental health treatments through the programs already in place, at no public expense, will successfully address the defendant's treatable problem condition, thereby reducing the risk to the public from further crimes of the defendant.

See USSG§5H1.3 (a downward departure may be appropriate to accomplish a specific treatment purpose).

Need for Sentence Imposed

The recommended sentence of 5 years probation reflects the seriousness of the offense, promotes respect for the law and provides just punishment, while affording adequate deterrence and protection of the public from future crimes.

With regard to deterrence the defendant has experienced the humiliation of arrest and conviction and the embarrassment of having placed the financial and emotional support to his wife and children at risk. As to deterrence to others, "criminologists and law enforcement officials testifying before the Commission have noted retail level drug traffickers are readily replaced by new drug sellers so long as demand for a drug remains high. Incapacitating low level drug sellers prevents little, if any, drug selling; the crime is simply committed by someone else." See, USSC, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice system is Achieving the Goals of Sentencing Reform 92004) at 134.

With regard to treatment, the defendant is presently engaged and will remain engaged throughout his probationary period, in a valuable treatment program with proven effectiveness in treating the root causes of his criminal conduct. In conjunction with the community support mechanisms in place – family and neighbors- the risk to the public of further criminality is eliminated without public expense.

The defendant has completed approximately 14 months of release under the following restrictive conditions:

1. Report as directed to US Probation and Pretrial Services
2. Surrender passport and not obtain a new passport
3. Travel is restricted to New Hampshire and Massachusetts
4. Maintain employment and provide proof of employment
5. Avoid all contact with persons involved in the case
6. Undergo substance abuse counseling
7. Refrain from possessing any firearms or destructive devices and have none in the residence
8. Refrain from excessive use of alcohol
9. Refrain from any use or unlawful possession of narcotic drug unless prescribed by licensed medical practitioner
10. Submit to random drug testing

He has successfully complied with all conditions. The defendant submits that there is no more accurate predictor of the likely success on probation with many of the same or similar conditions.

The defendant is statutorily eligible for probation. Pursuant to the guidelines, if the court were to grant the requested variances and were to reduce the defendant's Total Offense Level by 8 to an offense level of 13 the court could fashion a sentence of "home detention" in conjunction with similar conditions, with exceptions for the defendant's employment, medical care, substance abuse and mental health counseling and such other times as may be specifically authorized. The annual cost of incarcerating the defendant per year would be $29,291.62. The total public criminal cost to the public for supervision of the defendant by a probation officer would be $3,162.03. Incarceration is far more expensive and has no greater proven effectiveness in protecting the public by decreasing the defendant's criminality than would the continued treatment of the defendant through probation and community support.

Sentencing Guidelines

The defendant submits that the goals of sentencing will be satisfied by a variance for the reasons stated herein. In United States v. Kimbrough, 128 S.Ct.558 (2007), the Court held that sentencing courts may question those guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role" Id. at 575. The Court held that such guidelines, typically based on congressional directive, could yield a sentencing range that is "greater than necessary" to achieve Section 3553 (a) factors "even in the mine-run case." The Court contrasted directive-driven guidelines with those that are based on "empirical data and national experience", which could reflect a rough

approximation of sentences that might achieve §3553 (a)'s objectives. Id. quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007). In Kimbrough, the court found that in establishing the quantity-driven drug guidelines, the Commission did not employ its traditional empirical approach. Kimbrough, 128 S.Ct. at 575. Instead, the Commission simply implemented a congressional directive to peg drug sentences to drug weight. Id. at 567.

In its pre-Booker watershed decision, United States v. Koon, the Supreme Court conferred upon sentencing courts discretion and authority to take into account offense and offender circumstances present to a degree not contemplated by the Sentencing Commission. The First Circuit long ago recognized that extraordinary family ties and responsibilities warranted departure in the appropriate case United States v. Craven, 239 F. 3d.91 (1st Cir. 2001). United States v. Sclamo, 997 F.2d 970, 972-974 (1st Cir. 1993)(affirming a departure where, one a 3 year period the defendant developed "a special crucially important relationship" with the emotionally troubled son of his live in girlfriend). United States v. Rivera, 994 F 2d 942 (1st Cir. 1993). See United States v. Gallante, 111 F. 3d 1029 (2d Cir. 1997) (affirming departure in a drug case from 46-57 months to 8 days where defendant showed he was a conscientious father of two young sons who would have faced severe financial hardships). In the instant case, imprisonment will likely have enormous negative consequences on the defendant's 6 year old daughters, his 16 year old son (who already suffers due to abandonment issues with his biological father) and his special needs nephew.

The defendant accepts responsibility for creating this potentially tragic situation for his family, however, a sentence of probation is sufficient, but not greater than necessary to achieve the statutory purpose of punishment.

Should the Court determine that incarceration is necessary in this case, the defendant makes the following requests:

1. That the Court recommend the defendant for the BOP 500 hour Residential Drug Abuse Program;
2. That other than the special assessment of $100.00, all fines and costs be waived; and
3. That the defendant not be denied his Federal benefits.

> Respectfully Submitted,
> ANDRE LEVESQUE
> By his Attorney
>
> /s/ Steven J. Rappaport
> Steven J. Rappaport
> Rappaport & Delaney
> 228 Central Street
> Lowell, MA 01852
> Tel: 978-454-8103
> BBO#: 412300